IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**MICHAEL YARBROUGH, JR.; et al.**                              **PLAINTIFFS**

**v.**                                                              **CAUSE NO. 1:18cv51-LG-RHW**

**HUNT SOUTHERN GROUP, LLC**
*formerly known as* **Forest City**
**Southern Group, LLC; et al.**                                   **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS'
MOTION TO STRIKE SUPPLEMENTAL DESIGNATION AND REPORT OF
DR. PAUL GOLDSTEIN AS UNTIMELY, AND GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTION TO EXCLUDE OPINIONS
AND TESTIMONY OF DR. PAUL GOLDSTEIN**

BEFORE THE COURT are the [216] Motion to Strike and Exclude the Supplemental Designation and Report of Dr. Paul Goldstein as Untimely and [218] Motion to Exclude Opinions and Testimony of Dr. Paul Goldstein filed by Defendants Hunt Southern Group, LLC, Hunt MH Property Management, LLC, and Forest City Residential Management, LLC. Defendants argue that Dr. Paul Goldstein's supplemental expert reports should be excluded as untimely and that Dr. Paul Goldstein's opinions on causation should be excluded as unreliable under Federal Rule of Evidence 702. Both Motions are fully briefed. Having considered the submissions of the parties, the record, and relevant law, the Court finds that the Motion to Strike should be denied and the Motion to Exclude should be granted in part and denied in part. The Motion to Exclude will be granted to the extent that Dr. Goldstein's opinion concerning specific causation will be excluded as unreliable. It will otherwise be denied.

## I. BACKGROUND

The plaintiffs in this case – Michael Yarbrough, Jr., Ann Yarbrough, Alizelyia Yarbrough, Michael Yarbrough, III, and James Yarbrough – allege that they were exposed to mold while living in on-base housing at Keesler Air Force Base in Biloxi, Mississippi. This is one of fourteen pending similar cases filed by military families at Keesler.[1] The defendants are alleged to have owned or managed the subject on-base housing since its construction was completed in 2011. Plaintiffs commenced a lease of their residence on October 1, 2011. (*See* Military Lease Agreement 1, ECF No. 196-1.) Plaintiffs assert they repeatedly requested that Defendants address maintenance concerns involving mold and water damage in their residence. Plaintiffs allege that Defendants' actions and inactions caused Plaintiffs to be exposed to elevated levels of toxic mold and, as a result, they were forced to leave their home and suffered and continue to suffer physical and emotional injuries, medical expenses, and property damage.

---

[1] Eleven cases were filed on February 16, 2018: *Pate v. Hunt Southern Group, LLC*, 1:18cv46-HSO-JCG; *Schooling v. Hunt Southern Group, LLC*, 1:18cv47-HSO-JCG; *Fox v. Hunt Southern Group, LLC*, 1:18cv48-LG-JCG; *Cooksey v. Hunt Southern Group, LLC*, 1:18cv49-LG-JCG; *Foster v. Hunt Southern Group, LLC*, 1:18cv50-HSO-JCG; *Yarbrough v. Hunt Southern Group, LLC*, 1:18cv51-LG-JCG; *Poole v. Hunt Southern Group, LLC*, 1:18cv52-LG-JCG; *Stewart v. Hunt Southern Group, LLC*, 1:18cv53-HSO-JCG; *Eden v. Hunt Southern Group, LLC*, 1:18cv54-LG-JCG; *Owen v. Hunt Southern Group, LLC*, 1:18cv55-HSO-JCG; and *Delack v. Hunt Southern Group, LLC*, 1:18cv56-LG-JCG. *Owen* was dismissed by stipulation on August 6, 2018, and *Poole* was dismissed by stipulation on February 21, 2019. Four additional cases have since been filed: *Bean v. Hunt Southern Group, LLC*, 1:18cv393-HSO-JCG; *Rutherford v. Hunt Southern Group, LLC*, 1:18cv394-LG-JCG; *Alexander v. Hunt Southern Group, LLC*, 1:19cv28-HSO-JCG; and *Martin v. Hunt Southern Group, LLC*, 1:19cv172-HSO-JCG.

Plaintiffs' personal injury claims are claims for toxic tort. *Shed v. Johnny Coleman Builders, Inc.*, 761 F. App'x 404, 406 (5th Cir. 2019). "To establish causation in toxic tort cases, general causation first must be shown, then specific causation. General causation means that a substance is capable of causing a particular injury; specific causation looks to whether the substance caused the specific plaintiff's injury." *Id.* (citing *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 351 (5th Cir. 2007)); *see also Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 670 (5th Cir. 1999).

In support of their claims, Plaintiffs offer the expert testimony of Dr. Paul Goldstein, Ph.D., a professor of genetics and toxicology in the Department of Biological Sciences at the University of Texas, El Paso. Dr. Goldstein opines that the Yarbroughs have experienced symptoms – chest pain, sinusitis, congestion, respiratory problems, rhinitis, fatigue, headache, rash, allergic reaction, dermatitis, nausea, vomiting, and cough – consistent with exposure to toxins released by Aspergillus and Penicillium mold spores found in their residence. (*See* Goldstein Report 3-5, ECF No. 216-1.) He also opines that Plaintiffs' exposure to these toxins more likely than not caused their symptoms. (*Id.* at 5.) His first opinion goes to general causation; the second goes to specific causation.

Defendants' Motion to Strike the Supplemental Designation and Report of Dr. Paul Goldstein as Untimely maintains that Dr. Goldstein's March 6, 2019 [216-4] Supplemental Designation and March 21, 2019 [216-5] Supplemental Report –

which were produced after his deposition – should be excluded as untimely because they would severely prejudice Defendants.

Defendants' Motion to Exclude Opinions and Testimony of Dr. Paul Goldstein contends that Dr. Goldstein's opinions on general causation and specific causation should be excluded under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592-93 (1993), because they are unreliable.

## II. DISCUSSION

### a. Motion to Strike and Exclude as Untimely

Under Federal Rule of Civil Procedure 37(c)(1), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information . . . at a trial, unless the failure was substantially justified or is harmless." Whether the non-compliance was substantially justified or harmless turns on the following four-factor test: "(1) the importance of the excluded testimony, (2) the explanation of the party for its failure to comply with the court's order, (3) the potential prejudice that would arise from allowing the testimony, and (4) the availability of a continuance to cure such prejudice." *E.E.O.C. v. Gen. Dynamics Corp.*, 999 F.2d 113, 115 (5th Cir. 1993) (citation omitted). "The admission or exclusion of expert testimony is a matter left to the discretion of the trial court . . . ." *Eiland v. Westinghouse Elec. Corp.*, 58 F.3d 176, 180 (5th Cir. 1995). However, the Fifth Circuit has "emphasized that continuance, not exclusion, is the preferred means of dealing with a party's attempt to designate a witness out

of order or offer new evidence." *Gen. Dynamics Corp.*, 999 F.2d at 116 (citing *Bradley v. United States,* 866 F.2d 120, 127 n.11 (5th Cir. 1989)).

Despite the fact that Plaintiffs offer no compelling explanation for the untimeliness of these supplemental reports, the Court finds that the importance of the testimony and the lack of prejudice to Defendants weighs in favor of admitting these supplemental designations. Dr. Goldstein's opinion is the only expert evidence on causation for Plaintiffs' toxic tort claims. As will be explained *infra*, expert evidence is necessary to establish causation for such a claim. Defendants also suffer no prejudice because Dr. Goldstein offers no new conclusions in his supplemental designations and – as will also be explained *infra* – Dr. Goldstein's opinion on specific causation must be excluded as unreliable. Defendants' [216] Motion to Strike and Exclude the Supplemental Designation and Report of Dr. Paul Goldstein as Untimely will therefore be denied.

b. <u>Motion to Exclude as Unreliable</u>

"Under *Daubert*, Rule 702 charges trial courts to act as 'gate-keepers'. . . ." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243-44 (5th Cir. 2002) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592-93 (1993)). "District courts are to make a 'preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.'" *Carlson v. Bioremedi Therapeutic Sys., Inc.*, 822 F.3d 194, 199 (5th Cir. 2016) (quoting *Pipitone*, 288 F.3d at 243-44). "In short, expert testimony is admissible only if it is both relevant and

reliable." *Pipitone*, 288 F.3d at 244 (citing *Daubert*, 509 U.S. at 589). The party seeking to have the district court admit expert testimony bears the burden of proof. *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc).

"A party seeking to introduce expert testimony must show '(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.'" *Carlson*, 822 F.3d at 199 (quoting *Smith v. Goodyear Tire & Rubber Co.*, 495 F.3d 224, 227 (5th Cir. 2007)). "Ultimately, the trial court must also find an adequate fit between the data and the opinion proffered." *Brown v. Ill. Cent. R. Co.*, 705 F.3d 531, 535 (5th Cir. 2013) (quotation omitted). "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

Dr. Goldstein's opinion is primarily contained within his original report (*See* Goldstein Report, ECF No. 216-1.) His first supplemental report mostly lists additional supporting literature absent from his original report. (*See* Goldstein 1st Supp. Report; ECF No. 216-4.) His second supplemental report responds to the criticism of his original report by Defendants' expert, Dr. Allison Stock, Pd.D. (*See* Goldstein 2d Supp. Report, ECF No. 216-5). It does not contain new conclusions, but it includes survey forms completed by Plaintiffs in which they self-report

lifestyle habits and exposure to environmental irritants (presumably for the purpose of demonstrating the absence of other possible causes of their health symptoms).

Dr. Goldstein states that he applied the Bradford Hill Criteria of Causation to determine "that the residents in the Yarbrough household were exposed to, and suffered from, toxins released by the presence of *Aspergillus* and *Penicillium* in their home." (Goldstein Report 5, ECF No. 216-1.)

> Sir Bradford Hill was a world-renowned epidemiologist who articulated a nine-factor set of guidelines in his seminal methodological article on causality inferences. *Milward v. Acuity Specialty Products Group, Inc.*, 639 F.3d 11, 17 (1st Cir. 2011) (citing Arthur Bradford Hill, *The Environment and Disease: Association or Causation?*, 58 Proc. Royal Soc'y Med. 295 (1965)). The Bradford Hill criteria are nine factors "widely used in the scientific community to assess general causation." *In re Stand 'N Seal Products Liab. Litig.*, 623 F. Supp. 2d 1355, 1372 (N.D. Ga. 2009) (citing *Gannon v. United States*, 292 F. App'x. 170, 173 (3d Cir. 2008)). Sir Bradford Hill's article explains that "one should not conclude that an observed association between a disease and a feature of the environment (e.g., a chemical) is causal without first considering a variety of 'viewpoints' on the issue." *Milward*, 639 F.3d at 17.

*Jones v. Novartis Pharm. Corp.*, 235 F. Supp. 3d 1244, 1267 (N.D. Ala. 2017), *aff'd*, 720 F. App'x 1006 (11th Cir. 2018). The nine factors considered are

      (1) the strength of the association;
      (2) the consistency of the association;
      (3) the specificity of the association;
      (4) the temporal relationship of the association;
      (5) whether there is a dose-response relationship;
      (6) whether causation is biologically plausible;
      (7) the coherence of the association;
      (8) the presence of experimental evidence; and

> (9) evidence by analogy.

*Id.* (citing *In re Stand 'N Seal*, 623 F. Supp. 2d at 1372). "These factors are viewed as guidelines, and it is acknowledged that each factor need not be fulfilled in order for a researcher to proclaim causation." *In re Neurontin Mktg., Sales Practices, and Prods. Liab.*, 612 F. Supp. 2d 116, 133 (D. Mass. 2009).

Dr. Goldstein's report offers no analysis for how he arrived at the conclusions that make up his opinions. He does not explain how any of the Bradford Hill factors were applied in this case. But reliance on the Bradford Hill criteria was seemingly unnecessary (insofar as general causation is concerned) because he ultimately cites to numerous published pieces of academic literature supporting the notion that exposure to certain types of mold and mold-produced toxins can cause symptoms experienced by the plaintiffs. Defendants' expert, Dr. Stock, does not dispute that exposure to mold and mold-produced toxins can cause these symptoms. Accordingly, the Court finds Dr. Goldstein's opinion concerning general causation to be sufficiently reliable to satisfy Rule 702.

However, to the extent that Dr. Goldstein intends to opine that exposure to mold was the specific cause of any individual plaintiff's symptoms, he has failed to demonstrate that such an opinion is reliable. As an initial matter, "the Bradford Hill criteria are used to establish general causation from epidemiological studies – they are not used to establish specific causation." *In re Viagra Prod. Liab. Litig.*, 658 F. Supp. 2d 950, 958 (D. Minn. 2009); *see also Jones*, 235 F. Supp. 3d at 1267 ("The Bradford Hill criteria are nine factors 'widely used in the scientific community

to assess general causation.'"). The Bradford Hill criteria are used to assess whether the association between an illness and exposure to an environmental factor is, in fact, causal, or merely coincidental. This inquiry goes to the essence of general causation – whether a substance is capable of causing the illness observed. It does not assess whether exposure to the substance specifically caused the illness observed in a particular instance. Dr. Goldstein's purported reliance on the Bradford Hill criteria to determine that Plaintiffs' exposure to mold specifically caused their symptoms renders his opinion on specific causation unreliable.[2]

Dr. Goldstein even explains in his deposition testimony that, despite the conclusory statement in his report, he did not and cannot actually render an opinion on specific causation:

> [Defense Counsel Walter Boone]: Doctor, your language there "suffered from," do you see that?
> [Dr. Goldstein]: Yes.
> Q: As I understand your whole analysis here, when you say "suffered from," you are not intending to testify that a particular symptom by a particular plaintiff was caused by a particular mold; is that true?
> A: I'm talking about the cohort. That's correct.
> Q: All right. And what you're saying is, is that some of these symptoms can be caused by exposure to some molds, and some people in the Delack household had some of these symptoms; true?
> A: Correct. That's a good synopsis.
> Q: All right. And that same syllogism is true for each of the plaintiffs in these cases; correct?
> A: Yes.
> . . . .

---

[2] Dr. Goldstein's toxic tort causation opinion has previously been excluded for, among other things, inappropriately applying the Bradford Hill criteria for both general and specific causation. *See Frischhertz v. SmithKline Beecham Corp.*, Civ. A. No. 10-2125, 2012 WL 6697124, at *3-4 (E.D. La. Dec. 21, 2012).

- 9 -

> Q: In all of the nine cases, the most you can say is that some of these symptoms can be caused by some exposure to some molds, and that some people in those households had some of those symptoms; true?
> A: I would say that's pretty close.
> . . . .
> Q: And in general, that is your position with respect to each of the individual plaintiffs' particular symptoms. We would – we would have to go to talk to a medical doctor to determine whether those symptoms were caused by anything in particular; is that fair?
> A: For that specific person and give – and with the physician having the complete knowledge that they were exposed to mold and specific – and that these molds can produce mycotoxins.

(Goldstein Depo. 86-87, 93, ECF No. 216-2 (ECF pagination).)

Even if he could somehow utilize the Bradford Hill criteria to establish specific causation, Dr. Goldstein's report does not demonstrate his application of the methodology he purportedly relied upon. There is no evidence that he actually considered any of the nine factors. Without an explanation of his methodology and analysis, "Dr. [Goldstein's] opinion is wholly conclusory *ipse dixit*."[3] *Burst v. Shell Oil Co.*, 120 F. Supp. 3d 547, 554 (E.D. La. 2015).

Moreover, despite the fact that Plaintiffs in this case complain of symptoms with any number of possible causes – abdominal pain, headaches, vomiting, cough, nasal congestion, dermatitis, dizziness, diarrhea, and fatigue, just to name some – Dr. Goldstein did not perform a differential diagnosis to rule out other environmental factors as the potential cause of Plaintiffs' symptoms:

---

[3] Dr. Goldstein's toxic tort causation opinion has previously been excluded for failing to set forth the basis and methodology supposedly used to reach his conclusions. *See Mause v. Glob. Household Brands, Inc.*, No. CIV.A. 01-4313, 2003 WL 22416000, at *2 (E.D. Pa. Oct. 20, 2003).

> Q: . . . So let me ask you this: You're just telling me that for Makayla Foster, for example, there may be a lot of different causes [of her allergic rhinitis], one of which is mold, and you're not getting to that that was the cause; is that right?
> A: Okay. There can be other causes for symptoms. One of those causes for the symptoms we're discussing has been linked to exposure to molds. I'm not negating exposure to other symptoms – to other environmental factors. I'm just saying that one of those, which should not have been in her home, . . . was the identification of these molds, which are known to be extremely toxic. So that's the answer to your question. There might have been other factors for her, but one of those factors that have to be considered is her exposure to mold, which was beyond her control.
> . . . .
> Q: And what did you do, sir, to rule out those other environmental factors?
> A: I didn't rule them out. I included them.
> . . . .
> Q: So your testimony is that mold is a possible cause, not the only possible cause, and you didn't do anything to determine whether – or which one of the possible causes it was; is that fair?
> A: I said that mold is a possible cause, and there may be other environmental factors that could have contributed as well. Just as you live in this world, right, and you are exposed to those things. . . . But the fact is, is that she was still exposed to this mold. You can't negate that, and you can't take that away from her. And it is a possible contributor, that's for sure.

(*Id.* at 59 (ECF pagination).)

Dr. Goldstein did not look for the effect that mold exposure had on any particular defendant. Rather, he compiled all of the symptoms experienced by all members of Plaintiffs' household and noted their consistency with exposure to some of the types of mold found present in their home. He did not determine that mold – as opposed to some other environmental allergen or irritant – was the actual cause

- 11 -

of any plaintiff's symptoms. A differential diagnosis may not be required in all cases of exposure to a toxic substance, *see, e.g.*, *Michel v. Ford Motor Co.*, No. CV 18-4738, 2019 WL 118008, at *5 (E.D. La. Jan. 7, 2019) (finding reliable a doctor's opinion that asbestos exposure substantially contributed to the plaintiff's mesothelioma, in part, because the doctor established that almost no other causes of mesothelioma exist in the United States), but nothing suggests that this is such a case. Dr. Goldstein waited until after issuing his report to survey Plaintiffs (through self-completed forms) about whether they engaged in certain lifestyle habits or were exposed to certain substances. This post-hoc bootstrapping does not resuscitate his unsubstantiated opinions on specific causation.[4]

### III. CONCLUSION

Dr. Goldstein's logical jump from his determination that Plaintiffs' symptoms are consistent with exposure to mold to his conclusion that their symptoms were more likely than not caused by exposure to mold is nothing more than *ipse dixit*. It must therefore be excluded as unreliable. Fed. R. Evid. 702.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the [216] Motion to Strike and Exclude the Supplemental Report of Dr. Paul Goldstein as Untimely

---

[4] It is significant to note that Dr. Goldstein is a toxicologist, not a medical professional. Nothing in his background suggests that he is qualified to render medical opinions. Moreover, Dr. Goldstein's conclusion that exposure to toxins **more likely than not caused** Plaintiffs' symptoms, is not the causation standard of proof required under Mississippi law. *See Catchings v. State,* 684 So.2d 591, 596 (Miss. 1996) (holding that only "opinions formed by medical experts upon the basis of credible evidence in the case and which can be stated with reasonable medical certainty have probative value"); *See also Estate of Sander v. U.S.,* 736 F.3d 430 (5th Cir. 2013).

filed by Defendants Hunt Southern Group, LLC, Hunt MH Property Management, LLC and Forest City Residential Management, LLC is **DENIED**.

**IT IS FURTHER ORDERED AND ADJUDGED** that the [218] Motion to Exclude Opinions and Testimony of Dr. Paul Goldstein filed by Defendants Hunt Southern Group, LLC, Hunt MH Property Management, LLC and Forest City Residential Management, LLC is **GRANTED IN PART AND DENIED IN PART**. The Motion is **GRANTED** to the extent that Dr. Goldstein's opinion concerning specific causation is excluded as unreliable. The Motion is otherwise **DENIED**.

**SO ORDERED AND ADJUDGED** this the 12th day of September, 2019.

*s/ Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE